## JOSEPH H. ECHOLS, plaintiff in error, *vs.* P. R. GRATTAN, executor, defendant in error.

1. Suit was brought on three notes, of which the following is a copy:
" $1,761 33—Twelve months after date, I promise to pay Eliza F. Gilmer, or bearer, the sum of seventeen hundred and sixty-one 33-100 dollars, for value received; the said sum to be paid in currency, at the present rates, 148 to 100, or in whatever good currency may be used at the time the note falls due, with interest from date, December 1st, 1865."
And the defendant set up, by his plea, that the intention of the parties to the contract was, that the property purchased, for which the notes were given, was valued in currency, and the gold equivalent of the currency was made the standard of the payment, which, at present rates, would reduce the amount of the principal due:
*Held,* That the principal due was a fixed amount, expressed in the face of the note, and that the sum stipulated to be paid is the principal due under the contract, and cannot be reduced by any theory of construction arising out of the terms of the instrument:

2. *Held again,* That, while the legal intendment of the party may be inferred to mean currency, in the expression *dollars* in the note, such intendment is qualified by the terms of the contract; and the words, " the said sum to be paid in currency, at the present rates, 148 to 100," which was the value of gold at the time, bears intrinsic evidence that this provision for payment in currency, at a stipulated rate, was based upon a gold standard in the sum fixed to be paid in such currency:

3. *Held again,* That the superadded words providing for payment in currency, at present rates, 148 to 100, or in whatever good currency may be used at the time the note falls due, strengthens the construction that the principal was the *sum fixed to be paid,* and the term *good currency,* contemplated by the parties, reasonably intended a better currency than that previously expressed, and that the plaintiff was entitled to recover the principal and interest, in good currency.

4. While we do not affirm the principle of construction charged by the Court as the law of this case, nor accept the finding of the jury as strictly accurate, under our view of construction, still, as it appears, from the credits and terms and time of the trade, that Mrs. Gilmer contracted to receive good currency in payment of the note, and the verdict accomplishes substantial justice between the parties, we affirm the judgment of the Court below. WARNER, J., concurred.

McCAY, J., dissenting:

A promissory note made in 1865, payable, generally, in dollars, is payable in United States currency, and when the parties add to such a

note the words, "payable in currency, at the present rates, 148 to 100, or in whatever good currency may be used at the time the note falls due," the true construction is, that they intended to make the note payable in currency, at all events, but that it should be secured and paid as discharging more or less of the face of the note, accordingly, as it should, at the time, be worth more or less than the rates agreed on, to-wit: 148 to 100.

Promissory Notes. Contracts. Before Judge ANDREWS. Oglethorpe Superior Court. October Term, 1870.

Grattan, as executor of Mrs. Gilmer, brought "complaint" against Echols on three promissory notes, for $1,761 33 each, dated the 1st day of December, 1865, due at one, two and three years after date, respectively, with interest from date, made by Echols, payable to Mrs. Gilmer, or bearer. The first of them was in these words:

"Twelve months after date, I promise to pay Eliza F. Gilmer, or bearer, the sum of seventeen hundred and sixty-one 33-100 dollars, for value received; the said amount to be paid in currency, at the present rates, 148 to 100, or in whatever good currency may be used at the time the note falls due, with interest from date, 1st December, 1865.

"J. H. ECHOLS."

On it were indorsed the following credits:

"Received December 1st, 1866, one hundred and twenty-three 29-100 dollars on the within note, in United States currency."

"December 31st, 1867. I have paid, this day, five hundred dollars, in United States currency, at the rate of $1 33 to $1 00, on this note—the present value of gold."

"December 21st, 1868. Received of J. H. Echols three hundred and fifty dollars, in currency, currency being now $1 35 for $1 00 in gold."

The other two were just like this, except that they were due at two and three years, respectively, and had no credits on them.

Echols *vs.* Grattan.

Besides the general issue, Echols pleaded as follows: In making and accepting said notes, the true intention of the parties was to take the currency then in use, as the standard of *pricing the property*, for which the notes were given and the gold equivalent of the currency price, *at that time*, as the standard of *payment*. And this gold equivalent was to be ascertained by multiplying the number of dollars named in the notes by one hundred, and dividing the product by one hundred and forty-eight; this result, to-wit: $3,570 27, in gold, being the amount of *value* which the parties stipulated defendant was to pay and the payee was to receive. And gold, and nought else, was made, and intended to be made, the sole and exclusive *standard of value and measure of payment*. The provision, as to payment in currency, was not for any *particular currency*, but only for such an *amount* of whatever currency might be used as should be equivalent in value, at the *time of payment*, to the stipulated sum of gold; the sum of gold to be ascertained and *fixed* at the *date* of the *notes* by said rule. This provision was intended for defendant's benefit, and gave him the option to pay, in lieu of the stipulated sum of gold, such an amount of currency as would be equivalent to gold at the *time of payment*. And so $608 91 in gold is due on the first note, as principal, with interest from date of last payment to date of tender, and the amount due on the other two is $2,380 17, in gold, with interest from the 1st of December, 1865, to the date of tender. Further, he pleaded a tender, made the 31st of March, 1870, of the amount due on said notes, according to said rule.

Plaintiff's counsel introduced the notes and closed. He admitted that one hundred and forty-eight to one hundred was the rate of currency to gold at the date of the notes. There was no other evidence.

The Court charged the jury, that the contract on each of the notes was an obligation to pay in legal tender notes of the United States, the number of dollars expressed on the face of the notes, regardless of the value of such legal tender

Echols *vs.* Grattan.

notes as compared with gold at the time of payment, and that the credits were to be counted for the number of dollars expressed in them, respectively, and that they should find in dollars and cents generally, without specifying the medium of payment. The jury found $1008 00 principal, and $129 36 as interest on the first note, and $3,522 00 as principal, and $1,205 00 as interest on the others, with costs of suit. Said charge is assigned as error.

LINTON STEPHENS, W. G. JOHNSON, for plaintiff in error. Intention governs: Revised Code, sections 2713, 2714, 2715. Defendant had option as to payment: 1st Bouv. Inst., 268, notes *a* and *b*; 2 Par. on Con., 169, 170; Chipm. on Con., 35, 36; 1st Poth. on Ob., 245, 246, 247, 248, 250; 11 John. R., 59, 60; 1st Douglass R., 16. Change of currency cannot change notes: 3d Fairfield's R., 441; 8 Wallace R., 557; Sedg. on Dam., 202, 203, 233; 1 Poth. on Ob., 33, 160, 169, 170; Fry on Specific Performance, sections 235, 237, 252; Sedg. on Dam., 417, 418, 419, 37, note 2, 422, note 1, 468, 469; 3 Car. & P., 240. Dollars means national currency dollars: Legal Tender Act 25th February, 1862; 8 Wallace R., 612, 613. Agreed value is measure of damages: Revised Code, section 2894; Chipm. on Con., 35, 36; 3 Conn. R., 60; 5 Wend. R., 393; 42 Maine R., 233; 7 Wallace R., 260; 30 Ga. R., 348: 40th, 476; 12 S. & M. (Miss.) R., 495; 4 Dall. R., 411; 1 Brock R., 115; 15 Ohio R., 129, 130; 24 Ill. R., 482; 18th, 58, 59; 17th, 39, 40; 9 Cal. R., 364; 12 Ind. R., 503, 504. The credits to be measured same way: Revised Code, section 2858; Waterman on Set-off, etc., 474, 475.

S. H. HARDEMAN, R. TOOMBS, for defendant. Construe notes strongly against maker if doubtful: Revised Code, section 2715, (4).

Echols *vs.* Grattan.

LOCHRANE, C. J.

1. This case comes before the Court on the construction of a contract in writing, entered into between the parties in the following words, to-wit:

" Twelve months after date, I promise to pay Eliza F. Gilmer, or bearer, the sum of seventeen hundred and sixty-one 33-100 dollars for value received; the said amount to be paid in currency at the present rates, 148 to 100, or in whatever good currency may be used at the time the note falls due, with interest from date, December 1st, 1865.

" J. H. ECHOLS."

Two notes similar to this were given, due at two and three years after date. Upon suit brought, the defendant pleaded that the intention of the parties to this contract was, that the property was valued in currency, and the gold equivalent of the currency was made the standard of payment, etc. The fact was admitted, that at the time of the contract, gold was worth one hundred and forty-eight to one hundred. This, with the entries of credits on the notes, constituted all the evidence in the case.

The Court charged the jury that the contract expressed in each of the notes created an obligation to pay in legal-tender notes of the United States so many dollars as are expressed in the face of the notes, without regard to the value of such legal tender notes as compared with gold at the time of payment, and that the credits were to be counted for the number of dollars expressed in them, respectively, and that their finding should be in dollars and cents, generally, without specifying any particular kind of money as the medium of payment.

The question turns upon the construction of the notes, and this construction must be given upon the notes themselves. The death of Mrs. Gilmer prevents the defendant from testifying, and thus we are restrained to the interpretation of intention from the language of the instrument.

It is contended that the value of the property sold was estimated in currency; upon payment, the estimate was to be upon the gold standard, at the rate currency held to gold at the time of the contract. By this rule the appreciation of currency reduces the face of the note to that standard. As, for illustration: the principal, $1,761 33, at one hundred and forty-eight to one hundred, if the currency were at the same rate now as then, would be still that amount, $1,761 33; but as currency has improved, and is some one hundred and ten to one hundred, the principal is reduced to that *pro rata* standard, and may be discharged by the payment of that much less, some $1,200 00.

We have gone through the authorities presented to sustain this view of the case. But after a close consideration of what this contract expresses as the intention of the parties thereto, it presents to our mind but one simple solution. Mrs. Gilmer sold certain property for a definite, ascertained amount, which is expressed in the face of each of the notes. "I promise to pay Eliza F. Gilmer, or bearer, the sum of $1,761 33, for value received." By whatever construction we may reduce the value of the currency, in which this sum is to be paid, we cannot see how or upon what theory the amount promised, *a specific* sum to be paid, can be reduced.

It may be argued, that if the note had simply stopped at the point just recited, it would have been payable in currency, that such was its legal intendment, broadly and without condition. Yet if it had, it is clear that the sum to be paid as principal was the amount stipulated to be paid in the face of the note.

But the note goes on to provide how the sum is to be paid. Its language is, "the said amount to be paid in currency, at the present rates, one hundred and forty-eight to one hundred." This provision of payment in currency bears upon its face that the original amount was on some other basis than currency. Or, why stipulate that the said amount is to be paid in currency? And what the basis was becomes

more clear when we examine how the currency is to be rated as to its payment—one hundred and forty-eight to one hundred, which was the value of gold as compared with currency at the time. Putting these facts together, it would appear to have been the original intent of the parties to have put the principal sum to be paid on a gold basis, and provide for the payment, in currency, at the rate the gold was worth at the time. Some ambiguity, it is contended, exists as to the intent of these parties by the superadded condition following the language, cited in these words: "the said amount to be paid in currency at the present rates, one hundred and forty-eight to one hundred, or in whatever good currency may be used at the time the note falls due, with interest from date."

Now, the good currency is not expressed, but in contemplation of the parties it must have meant some currency better than the then currency, worth one hundred and forty-eight to one hundred, and if in bank bills, *or good currency at the time the notes fall due* contemplated any currency, and present currency may, by its appreciation, be regarded *good currency*, within the meaning of the parties, if it was equal to gold, we still do not see how this contract can be construed to mean that a less sum than the principal with interest is to be paid in such good currency; for it certainly expresses that sum, to-wit: $1,761 33-100, to be paid in whatever good currency may be used at the time the note falls due, with interest. Or if we take the previous stipulation, that the currency was to be at the rate of one hundred and forty-eight to one hundred, in either event, it appears to us that Mrs. Gilmer was to have that amount, agreed upon and expressed as the principal, due to her. This is the construction we give the instrument itself.

Now let us see what meaning attaches to the credits. There are three credits; the first simply specifies the receipt of a certain sum in United States currency. The other two, received by counsel for the executor, express one payment at the rate of one hundred and thirty-three to one hundred,

and the other at the rate of one hundred and eighty-five to one hundred.   We gather from these credits the idea of the defendant, Mr. Echols, that there was something in the rate of appreciation of the currency in which the credits were made.   But we are compelled to the conclusion that there is no where evidence of this contract being predicated on the basis that would reduce the sum to be paid specified in the note.

Upon considering the construction of this instrument and the intention of the parties, as we must take it from the notes themselves, we think Mrs. Gilmer entitled to receive the principal agreed upon; and in receiving this she gets all she contracted to receive.   And, inasmuch as the present currency may be considered as good currency, within the meaning of the contract, while neither the charge of the Court nor the verdict may come strictly within our construction of the statute, yet as substantial justice has been done, we affirm the judgment of the Court below.

WARNER, J., concurred, but wrote no opinion.

McCAY, J., dissenting.

I cannot concur in the opinion of a majority of the Court. I cannot think it was the intent of the parties that this contract was intended to be payable in gold, or in currency at its gold value.   It would have been so easy to say this, by adding, after the sum, the words, "in gold, or in currency at its gold value," that the failure to do it is, to my mind, conclusive that such was not the intent.   Besides, if this was meant, why fix the then value of currency ?   If it was to be paid at the gold value, what did the then rate of currency have to do with it?   The first payment was made when currency was very nearly what it was when the note was made, and the credit was put on the note for the full amount paid. This is a strong circumstance to show that it was not intended the note should be paid in currency at its gold value.

Echols *vs.* Grattan.

Nor can it be, with any show of reason, said that it was to be paid in currency at one hundred and forty-eight for one hundred, whatever might be its true value; since in that view, as currency was, by the contract, demandable, the defendant might have to pay more than even the gold value. Currency is now only one hundred and ten; to pay it at one hundred and forty-eight, would give the payee of the note more than even gold.

There are but two other views: 1st. They might have meant that the note should be paid in a currency worth *at least* one hundred and forty-eight to one hundred, and if worth more, that the payee should have it, dollar for dollar, by tale. But it seems to me that if they had meant this, they would have used the words "at least," or some equivalent words.

My judgment upon the whole is, that the parties intended by the note that it should be paid in currency, or in any other circulating medium in common use at the time of payment, and that they fixed the mode by which the value of it should be ascertained and credited on the note, to-wit: it should always pay just as much of the note as it was worth, more or less than one hundred and forty-eight to one hundred. The value of the property, as then agreed upon in currency at its true value, was always to be paid—no more, no less. If the currency got worse, the debtor was to make it worth one hundred and forty-eight to one hundred; if it got better, it was to pay just as much more of the face of the note as it was worth more than one hundred and forty-eight to one hundred.